IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J. CALDARERA & COMPANY, INC.                               PLAINTIFF

VS.                          CIVIL ACTION NO. 3:20-cv-118-CWR-FKB

COMPLEX MANAGEMENT, INC.,
DELTA PROPERTY MANAGEMENT, INC., and
REBECCA CASE IVISON                                       DEFENDANTS

## COMPLAINT

Plaintiff J. Caldarera & Company, Inc. ("JCC") files this complaint against Defendants Complex Management, Inc. ("CMI"), Delta Property Management, Inc. ("DPM"), and Rebecca Case Ivison ("RCI"), and in support, states the following:

## PARTIES

1. Plaintiff JCC is a Louisiana corporation authorized to do business in the State of Mississippi. JCC's principal place of business is located at 201 Woodland Drive, LaPlace, Louisiana 70068.

2. Defendant CMI is a Mississippi corporation that may be served through its registered agent, Rebecca Ivison, at 1437 Old Square Road, Suite 201, Jackson, Mississippi 39211, or 2631 Lake Circle, Jackson, Mississippi 39211. CMI's principal place of business is located in Jackson, Mississippi.

3. Defendant DPM is a Mississippi corporation that may be served through its registered agent, Rebecca Ivison, at 1437 Old Square Road, Suite 201, Jackson, Mississippi 39211, or 2631 Lake Circle, Jackson, Mississippi 39211. DPM's principal place of business is located in Jackson, Mississippi.

4. Defendant RCI is an adult resident citizen of Hinds County, Mississippi who may be served with process at 1437 Old Square Road, Suite 201, Jackson, Mississippi 39211, or 2631 Lake Circle, Jackson, Mississippi 39211.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of Louisiana, and Defendants are citizens of the State of Mississippi, and the amount in controversy exceeds $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all Defendants reside in this district.

## FACTS

**A.  JCC's Judgment Against CMI**

7. JCC is a Mississippi licensed construction contractor.

8. Prior to his death in November 2014, Herb Ivison ("Herb") was the 100% owner of CMI and the 100% owner of DPM. Further, Herb owned partnership interests in approximately 50-60 limited partnerships that owned low-income apartment complexes in Mississippi. At the time of his death, Herb was married to RCI.

9. CMI, at least until recently, managed upwards of 1600 subsidized apartment units located in the State of Mississippi, including those units at the Crosby Shelters Apartments ("Crosby Shelters") owned by Crosby Shelters, Ltd. ("CSL").

10. Since June 20, 2017, RCI has controlled CMI, DPM, and the limited partnerships. RCI will soon be the owner of CMI, DPM, and all other assets of Herb's estate, including the limited partnership interests.

11. CMI's only significant assets were its management agreements with the various apartment complexes under which it received monthly management fees in the approximate amount of $60,000.00.

12. In August 2016, Crosby Shelters suffered severe flood and windstorm damage to all five of its buildings.

13. On or about January 20, 2017, JCC entered into two construction contracts to perform repair and renovation work on Crosby Shelters.

14. On June 20, 2017, the Scott County Chancellor presiding over Herb's estate matter entered an *Order Directing Sale of Estate Assets* (**Ex. 1**), which accepted RCI's offer to purchase the assets of Herb's estate in exchange for the payment of claims against the estate. The order instructed the executor to "take all action necessary to place Rebecca Case Ivison, or her designee, in control and possession of all assets of the estate, business, personal or otherwise, including, but not limited to placing her in the sole management position over Complex Management, Inc., and any and all other businesses owned or operated by the estate...."

15. Since the Scott County Chancellor's June 20, 2017 order, RCI has controlled Herb's businesses, which she will own outright once the sale is finalized and the estate is closed.

16. In her September 7, 2018 deposition, RCI testified that she became aware of the work JCC was doing at Crosby Shelters within a week after the June 20, 2017 order was entered.

17. By September 20, 2017, JCC had substantially completed the work.

18. When RCI/CMI refused to pay JCC for the work it performed, on November 16, 2017, JCC filed in this Court its Complaint and Motion to Stay and Compel Arbitration, No. 3:17-cv-917-DPJ-FKB.

19. On April 13, 2018, the Court ordered CMI and CSL to arbitrate.

20. On October 1, 2018 through October 3, 2018, the parties held an arbitration before Christopher Solop, the arbitrator mutually chosen by the parties in accordance with the Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association.

21. On November 12, 2018, the arbitrator issued his Award Decision, finding CMI and CSL jointly liable to JCC in the amount of $1,492,553.50, plus interest.

22. On January 17, 2019, following briefing by the parties, the Court entered an order confirming the arbitrator's award and entered judgment in JCC's favor.

**B.  Post-Judgment Collections Efforts**

23. On February 7, 2020, JCC took CMI's deposition pursuant to a Court ordered judgment debtor examination. (**Ex. 2, February 7, 2020 Deposition Transcript**). During this deposition, RCI, as CMI's 30(b)(6) representative, testified:

   a. In January 2019, RCI transferred all of CMI's management agreements to DPM. (Ex. 2 p. 17:6-18:16, 21:6-14, 30:24-25). As a result of these transfers, CMI has no assets other than a couple thousand dollars in a dormant bank account and has no source of income to repay its debts, including its debt to JCC. (Ex. 2 p. 16:19-20. 23:18-22). CMI is insolvent as a result of the transfers. (*Id.*).

   b. RCI admitted that she personally made the decision to transfer the management agreements. (Ex. 2 p. 88:17-89:8).

   c. CMI/RCI admitted that CMI received nothing of value in exchange for the transfer of substantially all of its assets. (Ex. 2 p. 19:11-14, 29:2-8).

   d. CMI/RCI did not disclose or seek approval of these transfers from the Scott County Chancery Court or the executor of Herb's estate (Ex. 2 p. 25:22-26:11), and actively sought to conceal this information from JCC in resisting legitimate post-judgment discovery in the prior lawsuit, including bank subpoenas seeking information about DPM, and failing to produce documents in response to a Court-ordered judgment debtor examination.

   e. When asked why she made these transfers, RCI could not provide a credible reason. (Ex. 2 p. 29:15-23, 31:17-32:1). RCI claimed that it was Gary Thrash's

idea to move CMI's management agreements to DPM, but JCC's counsel has spoken with Mr. Thrash, and Mr. Thrash denies this.

24. DPM operates the same business of managing apartment complexes that CMI previously operated.

25. On information and belief, DPM has the same employees as CMI.

26. RCI is the sole officer/director of DPM and CMI, and once the estate sale closes, will be the sole owner of DPM and CMI.

## COUNT I: FRAUDULENT TRANSFER

27. JCC incorporates by reference the allegations contained in the preceding paragraphs.

28. The transfers of the CMI management agreements to DPM were made with the actual intent to hinder, delay, and defraud JCC.

29. The transfers of the CMI management agreements were to an insider.

30. RCI retained possession and control of the management agreements after the transfer as RCI is the sole officer/director of both CMI and DPM, and once the estate sale closes, RCI will be the sole owner of both entities.

31. RCI/CMI concealed the transfers from JCC, the estate, the executor of the estate, and the chancellor presiding over the estate proceeding. During a December 11, 2019 hearing in the Scott County estate matter, CMI's counsel represented that they were not stripping CMI of its assets, even though this evidently had already occurred.

32. RCI knew of JCC's work at Crosby Shelters soon after she gained control over CMI on June 20, 2017 and knew that JCC would bring a claim if it was not paid. RCI/CMI consummated the transfers of the management agreements shortly after the arbitrator's $1,492,553.50 award.

33. With the exception of a couple thousand dollars in a bank account, the management agreements – bringing 60,000 per month – were CMI's only assets.

34. CMI received nothing in exchange for the transfers.

35. CMI is insolvent as a result of the transfers.

36. CMI/RCI removed and concealed assets.

37. Further, pursuant to Miss. Code Ann. § 15-3-107(3), the transfers are constructively and presumptively fraudulent. *See RDS Real Estate, LLC v. Abrams Group Construction, LLC*, 2017 WL 278479 (S.D. Miss. Jan. 20, 2017).

38. Both DPM and Rebecca Ivison, individually, are liable to JCC for the value of the transferred assets. *See Stanley v. Miss. State Pilots of Gulfport, Inc.*, 951 So. 2d 535 (Miss. 2007) (conveying a business to a new corporation in order to avoid a corporate obligation sufficient to find personal liability) (citing *Morris v. Macione*, 546 So. 2d 969 (Miss. 1989)).

39. Pursuant to Miss. Code Ann. § 15-3-111, JCC requests that the Court:

   a. Preliminarily and permanently enjoin DPM and RCI from further transferring ownership of the management agreements.

   b. Preliminarily enjoin DPM and RCI from distributing or disposing of the proceeds of the management agreements and order that the proceeds of the management agreements be held frozen.

   c. Permanently attach the proceeds of the management agreements and order that they be paid directly to JCC until such time as the debt to JCC is satisfied.

   d. Enter a judgment against DPM and RCI in an amount equal to JCC's judgment against CMI and CSL.

### COUNT II: SUCCESSOR LIABILITY, DE FACTO MERGER, MERE CONTINUATION, AND CONTINUITY OF ENTERPRISE LIABILITY

40. JCC incorporates by reference the allegations contained in the preceding paragraphs.

41. CMI and DPM share an identity of officers, directors, owners, managers, supervisory personnel, and employees.

42. CMI and DPM share the same business facilities and have a common office address.

43. CMI and DPM are engaged in the same business, namely the management of low-income apartment complexes that participate in USDA/RD programs.

44. CMI and DPM have the same primary assets – the management agreements.

45. DPM inherited and benefits from CMI's business goodwill as a participant in USDA/RD programs.

46. On information and belief, CMI and DPM both do business as Southern Management Group and hold themselves out as one and the same entity.

47. Pursuant to the factors, tests, and reasoning set forth in *Paradise Corp. v. Amerihost Dev., Inc.*, 848 So. 2d 177 (Miss. 2003), DPM and RCI are liable for CMI's debts.

## COUNT III: INDIVIDUAL LIABILITY OF REBECCA IVISON/PIERCING CORPORATE VEIL

48. JCC incorporates by reference the allegations contained in the preceding paragraphs.

49. RCI treated corporate assets as her personal assets.

50. RCI has not observed corporate formalities.

51. RCI receives income from the proceeds of the transferred management agreements, which should have been used to pay corporate debts. As such, RCI prefers herself over other creditors, violating her fiduciary duties, and has committed fraud.

52. RCI has diverted corporate assets and abused the corporate form for her personal benefit.

53. RCI directly participated in and directed the fraudulent activities described herein.

54. RCI frustrated JCC's contractual expectations by stripping CMI of assets and its ability to repay its debts.

55. RCI is individually liable to JCC in an amount equal to JCC's judgment against CMI. *See Stanley v. Miss. State Pilots of Gulfport, Inc.*, 951 So. 2d 535 (Miss. 2006) (conveying a business to a new corporation in order to avoid a corporate obligation is sufficient to find personal liability).

WHEREFORE, PREMISES CONSIDERED, JCC respectfully requests the following relief from the Court:

    a. Preliminarily and permanently enjoin DPM and RCI from further transferring ownership of the management agreements.

    b. Preliminarily enjoin DPM and RCI from distributing or disposing of the proceeds of the management agreements and order that the proceeds of the management agreements be held frozen.

    c. Permanently attach the proceeds of the management agreements and order that they be paid directly to JCC until such time as the debt to JCC is satisfied.

    d. Enter a judgment against DPM and RCI in an amount equal to JCC's judgment against CMI and CSL.

    e. Such other relief as the Court deems appropriate.

Dated: February 28, 2020.

                                          **J. CALDARERA & COMPANY, INC.**

                                          By: _____
                                                   One of its Attorneys

OF COUNSEL:

Sheldon G. Alston, MSB #9784
salston@brunini.com
William D. Drinkwater, MSB #103913
wdrinkwater@brunini.com
Brunini, Grantham, Grower & Hewes, PLLC
190 East Capitol Street, Suite 100 (39201)
P.O. Drawer 119
Jackson, Mississippi 39205
Tel. (601) 948-3101
Fax (601) 960-6902